**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4380
_____

UNITED STATES OF AMERICA

v.

CRYSTAL PALING,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(Crim. No. 3-10-cr-00860-003)
District Judge:  Honorable Peter G. Sheridan
_____

Argued
May 21, 2014

BEFORE:  McKEE, *Chief Judge*, CHAGARES and GARTH, *Circuit Judges*.

(Filed: October 17, 2014)

Alan L. Zegas, Esq. (argued)
Law Offices of Alan L. Zegas
552 Main Street
Chatham, New Jersey 07928
        *Counsel for Appellant*

Glenn J. Moramarco, Esq. (argued)
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, New Jersey 07102
    *Counsel for Appellee*

_____

OPINION

_____

McKEE, *Chief Judge*.

This appeal is from a judgment of conviction entered by the District Court against

Crystal Paling, a former paralegal and real estate closing agent. Paling was convicted of

wire fraud conspiracy in violation of 18 U.S.C. § 1349, and money laundering in

violation of 18 U.S.C. § 1956(h), for her role in a scheme involving fraudulent real estate

closings. The sole issue meriting some discussion is whether the District Court violated

Paling's Constitutional right to confront the witnesses against her, when it admitted into

evidence the prior civil deposition testimony of a government witness who died before

trial. The remaining arguments are disposed of in the margin.[1] For the reasons that

follow, we will affirm.[2]

_____

[1] Paling's argument that the District Court violated her Constitutional rights to counsel
and a fair trial in denying her attorney's request to adjourn after her attorney received
additional discovery materials the day before jury selection has no merit. District courts
have "discretionary power to deny a continuance[]" that "will only be reversed if an
abuse of discretion is shown." *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991)
(citing *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984),
*cert. denied*, 470 U.S. 1029 (1985)); *see also United States v. Irizarry*, 341 F.3d 273, 305
(3d Cir. 2003). As Paling concedes, "the District Court acknowledged defense counsel's
need for time[]" and "express[ed] the need for the case to proceed." Br. at 38. The
District Court also assured Paling's attorney that it would accommodate any discovery
issues arising in the course of the trial. Da 96:16-17. Paling "makes no effort to

2

## I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. In 2010, a grand jury returned a two-count indictment against Paling and her co-defendants Daniel Verdia, who owned Monarch Mortgage, LLC ("Monarch"), a mortgage brokerage company, and Jaye Miller, who worked as a

---

demonstrate how the denial of h[er] request for a continuance prejudiced h[er] or impaired h[er] . . . defense counsel['s] ability to prepare a defense." *Irizarry,* 341 F.3d at 306. Therefore, the District Court's decision to deny Paling's attorney's request for an adjournment will be affirmed.

In addition, Paling asserts that the District Court erred in calculating the amount of loss and restitution; this argument is also without merit. Paling argues that, as a matter of law, successor loans cannot be included in the calculation of actual loss, and that, factually, the losses to successor lenders were not reasonably foreseeable. The District Court's methodology to include losses to successor lenders receives plenary review, while its determination that the losses are reasonably foreseeable will not be disrupted absent clear error. *United States v. Fumo*, 655 F.3d 288, 309 (3d Cir. 2011). The U.S. Sentencing Guidelines defines actual loss as that "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A). Paling presents nothing to support the contention that losses from successor lenders cannot be included in the calculation of actual loss. Moreover, appellate courts have affirmed district courts' decision to include successor losses in their restitution calculations. *See, e.g.*, *United States v. Appolon*, 695 F.3d 44, 68 & n.12 (1st Cir. 2012); *United States v. Washington*, 634 F.3d 1180, 1184-86 (10th Cir. 2011). Paling has presented no reason to disrupt the District Court's methodology to include successor losses nor its determination that the successor losses were foreseeable.

Paling's alternative argument that two of the five transactions should result in a reduced restitution is meritless. There is sufficient evidence to permit the District Court to conclude that the losses from the Florida transaction were reasonably foreseeable to Paling and that Paling's action to reduce the losses from the Long Beach Mortgage did not, in fact, reduce losses, only delay them. Therefore, the District Court's restitution determination will be affirmed.

[2] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 3231. We have jurisdiction pursuant to 29 U.S.C. § 1291.

loan officer and processor at Monarch.[3]  Count One charged defendants with wire fraud

conspiracy, the object of which was to profit from the sale and financing of residential

properties by obtaining fraudulent mortgages for unqualified borrowers, in violation of 18

U.S.C. § 1349.  Count Two charged defendants with money laundering in connection

with that activity, in violation of 18 U.S.C. § 1956(h).  At the close of trial, the jury

returned a guilty verdict as to both counts.  The District Court sentenced Paling to

concurrent terms of 37 months' imprisonment, and ordered her to pay $532,496.69 in

restitution.

    1.    <u>Criminal case</u>

As alleged by the government, the wire fraud scheme proceeded in three steps.

First, Verdia would identify a "straw" buyer and a seller who could be matched in a real

estate transaction.  Typically, the seller was a homeowner facing foreclosure, and the

buyer was told that he or she would own the property "on paper" for up to a year, after

which time he or she would no longer be involved.  One such individual,  Danielle

Ferrazzano, received $5,000 for agreeing to serve as a straw buyer.

The second step in the scheme was to apply for a mortgage loan in the buyer's

name, using the inflated sales price of the property and overstating the buyer's assets.

Mortgage lenders relied on this false information to approve the loans to the buyers.  The

---

[3] Verdia and Miller each pled guilty to conspiring with each other, Paling, and another
Monarch employee, Sandra Mainardi, to commit wire fraud and money laundering in
violation of 18 U.S.C. § 371.

4

loans were funded through interstate wire transfers into an account belonging to Philip Blanch, a real estate attorney with whom Paling was affiliated.

Paling was responsible for handling the third step of the scheme, which was to close these real estate transactions using fraudulent closing documents which Paling prepared then submitted to the mortgage lenders. Paling forged Blanch's signature on these documents, which falsely stated that the buyers had contributed their own funds toward the transactions. To support these statements, Paling and Mainardi asked buyers to write out "show" checks from their personal bank accounts that were later destroyed, rather than cashed or deposited. Mainardi testified that at one closing, she witnessed Paling shred a check written by Ferrazzano. Gov. Br. at 13.

As argued by the government, the goal of this scheme was to capture the extra loan proceeds that remained after the sellers' existing obligations were paid off. Paling allegedly diverted the proceeds via wire transfers from the closing account to Capital Investment Strategies, a shell company controlled by Verdia and Miller. After the closing, Paling typically made payments to the mortgage company for several months, so that the mortgages did not immediately go into default.[4]

2.      Prior civil suit

---

[4] As to money laundering conspiracy (Count 2), which stemmed from the above facts, the government alleged that Paling signed Blanch's name to wire transfers and checks that distributed the excess loan proceeds to Capital Investment Strategies. The government set forth evidence showing that Verdia and Miller divided these proceeds, and sent some of them back to Paling via her own shell company.

Years before Paling was indicted, a man named John Velardi sued Paling, Blanch, Ferrazzano, and Monarch in connection with the sale of Velardi's property to Ferrazzano. A former client of Blanch's law firm, Velardi alleged that the defendants engaged in fraud and malpractice during the real estate closing for that property. Attorney Eric Hughes, who represented both Paling and Blanch, took Velardi's deposition in 2007 in the course of civil discovery in that lawsuit. The deposition was fairly extensive, consisting of over 300 pages of transcript. Velardi died prior to Paling's criminal trial.

Before trial, the government filed a motion seeking to admit excerpts from Velardi's deposition and to have his testimony read to the jury. Specifically, the government sought to introduce testimony explaining Paling's conduct at the closing. The District Court granted the government's motion, finding that (1) Velardi was indisputably unavailable to testify at trial, and (2) Hughes had cross-examined Velardi at deposition. Thus, the District Court concluded, the requirements for the admission of former testimony of an unavailable witness had been satisfied in conformance with *Crawford v. Washington*, 541 U.S. 36 (2004). Appx. II at 69-72.

## II.

We exercise plenary review as to interpretation of evidentiary rules, and abuse of discretion as to evidentiary rulings. *United States v. Figueroa*, 729 F.3d 267, 276 n.15 (3d Cir. 2013). Errors not brought to the attention of the trial court are reviewed for plain error only. *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

## III.

6

Federal Rule of Evidence 804(b) provides an exception to the hearsay rule for testimony from a declarant who is unavailable at trial. Under the rule, former testimony is admissible if the declarant is unavailable and the party against whom the testimony is offered had an "opportunity *and* similar motive" to examine the declarant. Fed. R. Evid. 804(b)(1) (emphasis added). Rule 804(b) is therefore more restrictive than the Confrontation Clause as interpreted by the Supreme Court in *Crawford*, wherein the Court found that testimonial hearsay from a now-unavailable declarant may be admitted against a defendant at a criminal trial *if* the defendant had a prior opportunity to cross-examine him. *Crawford*, 541 U.S. at 68. Because Rule 804(b)(1) requires the party against whom the prior testimony is offered to have had a "similar motive" to develop the declarant's testimony, not merely the opportunity to do so, evidence that is admissible under Rule 804(b)(1) necessarily satisfies a defendant's Confrontation Clause rights. *See United States v. Mitchell*, 365 F.3d 215, 253 (3d Cir. 2004) (citing *Crawford* and Rule 804(b)(1), and noting that the Sixth Amendment demands only what the common law required: "unavailability and a prior opportunity for cross-examination").

Significantly, the text of Rule 804(b)(1) does not require that a party had an *identical* motive to develop the testimony, only that the party had a "similar" motive. Whether a party had a similar motive to cross-examine a witness at a prior proceeding is essentially a factual question, discussed further below, the resolution of which we review deferentially. *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring); *United States v. Duenas*, 691 F.3d 1070, 1086-87 (9th Cir. 2012).

7

Here, Paling makes two assertions of error in challenging the admission of Velardi's prior deposition testimony. First, Paling asserts that when the District Court admitted the deposition testimony, it misapplied Rule 804(b)(1) by failing to require that Paling had not only an opportunity to cross-examine Velardi, but also a similar motive. Second, Paling asserts that she did not, in fact, have a sufficiently similar motive to develop Velardi's deposition testimony compared to her motive at the subsequent criminal trial. For the reasons set forth below, we find her arguments unpersuasive.

1.      <u>Application of Rule 804(b)(1)</u>

Paling argues that, in determining the adequacy of her opportunity to cross-examine Velardi, the District Court did not restate Rule 804(b)(1)'s "similar motive" requirement when it issued its oral ruling. *See* App'x II at 69-72. Indeed, the record demonstrates that the District Court did not use the word "motive" when rendering its decision. However, the record as a whole suggests that the Court understood, and therefore applied, the proper legal standard.

Prior to admitting Velardi's deposition testimony, the District Court held oral argument, during which the government conceded that while "the motives were not precisely identical" in both the civil and criminal case, "they really are very very close. [Paling's] goal in the civil litigation was to establish . . . that there was no fraud . . . just as it is here in the criminal case." App'x II at 49. Following a lengthy discussion regarding the cross-examination conducted in the civil case, the District Court granted the government's motion, stating in relevant part that:

> [The] issue really is . . . whether the defendant had an opportunity

8

to cross-examine the witness . . . . Mr. Hughes . . . was focusing on Ms. Paling's conduct because the closing concerned her and only her . . . . It's clearly focused on Ms. Paling, and Mr. Hughes was obviously *focused on her conduct at that time*. So, it seems to me that both of the criteria of *Crawford* have been met. And that is, that the testimony of Mr. Velardi, he's unavailable, and also *it was subject to cross-examination by Mr. Hughes who does seem to have honed in on Ms. Paling's conduct* . . . . So, I'll permit the reading of the testimony[.]

App'x II at 69-72 (emphasis added).

The District Court also noted that it had read the memoranda submitted by the parties, *id.* at 69, wherein the parties agreed that the Court was required to find that Paling's prior counsel had both an opportunity and "similar motive" to cross-examine Velardi. Supp. App'x at 10-12, 115-16. When certain relevant cases were discussed, the Court stated that it had reviewed them. *Id.* at 52. Moreover, shortly before ruling from the bench, the Court stated that it understood that similarity of motive was part of the proper legal standard. When Paling's counsel argued, "Judge, what we have is the question of *Mr. Hughes' motive* with respect to the questioning . . .," the Court interrupted him and stated, "*I understand.*" App'x II at 58 (emphasis added).

Given that there was no further dispute during the hearing about the proper legal standard, we find that Paling has not borne her burden of demonstrating that the Court plainly erred by misapplying the legal standard. The plain error standard of review is appropriate here because Paling's counsel did not object at the time the Court issued its oral ruling. *Id.* at 72. *See United States v. Gibbs,* 739 F.2d 838, 849 (3d Cir. 1984) (en banc) (plain error review applies where party fails to make a specific objection to an evidentiary ruling). In sum, the District Court's finding of a similar motive is implicit

9

from the record as a whole, and the Court therefore did not misapprehend the requirements of Rule 804(b)(1).  *See Lewis v. Horn*, 581 F.3d 92, 111 (3d Cir. 2009) (factual findings may be implicit); *United States v. Gricco*, 277 F.3d 339, 362 (3d Cir. 2002).

### 2.    Similar motive

Paling also argues that she did not have a sufficiently similar motive at deposition due to the fact that no criminal charges had been filed against her.  App'x II at 52-53. The District Court reviewed Velardi's deposition transcript and determined that Paling's attorney nonetheless engaged in questioning relevant to her criminal trial, because Paling's liability in both cases turned on the same issue -- *i.e.*, whether Paling engaged in fraudulent conduct in relation to the real estate closing.   App'x II at 72.  Thus, the District Court found that Paling's attorney in the malpractice case had the same interests as he would have had, had he defended her in her criminal fraud case.  We agree with this conclusion.

Velardi alleged in his civil lawsuit that Paling committed mortgage fraud in connection with the sale of his house to Ferrazzano.  Supp. App'x at 11.  Paling's incentive at deposition was clearly to negate any proof that the transaction she participated in was conducted fraudulently.  *Id*. at 12.  Indeed, her liability under *both* civil and criminal law turned on whether she knowingly engaged in fraudulent conduct. Therefore, we see little difference between Paling's motive during the deposition, and what her motive would have been had Velardi testified as a Government witness at her criminal trial.  *See, e.g., United States v. Vartanian*, 245 F.3d 609, 614 (6th Cir. 2001)

10

("[T]he motives of the civil action lawyer would necessarily be synonymous with those of the criminal defense attorney regarding the elicitation or possible challenge to such testimony."); *Mann*, 161 F.3d at 861 ("If Moore was a party to the prior suit, and it involved similar claims, we cannot say that the district court erred in ruling the testimony admissible under Rule 804(b)(1)[.]").  The fact that Paling may not have cross-examined Velardi as aggressively as she would have had she known she was facing criminal charges is a matter of tactics  --  not motive.  *See United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998).

Paling's motive to develop testimony that would dispute Velardi's allegations at the civil trial may not have been *identical* to the motive Paling's attorney would have if that same testimony was presented at her trial, but that is not what the law requires. Paling's motive at both the deposition and at trial was to discredit Velardi's allegations of fraud, which is sufficiently similar for purposes of Rule 804(b)(1).  *See Lloyd v. American Exports Lines, Inc*., 580 F.2d 1179, 1188-86 (3d Cir. 1978) (noting that, one factor in determining whether a party had a similar incentive to develop testimony at an earlier proceeding, is whether there was a "community of interest" in developing the testimony  in the two proceedings).

Thus, we find the District Court's factual conclusion, that Paling had sufficient motive and opportunity to cross-examine Velardi in the prior civil deposition, is supported in the record and not clearly erroneous.

**IV.**

11

For the foregoing reasons, we will affirm the judgment of the District Court. However, we do so with the caveat that, in the interest of preserving judicial resources, District Courts should state clearly on the record whether a party had *both* opportunity and similar motive to examine the unavailable declarant, when determining whether the admission of prior deposition testimony runs afoul of the Constitution.